**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

**CIVIL ACTION NO. 1:14-CV-00107-JHM**

**STANLEY LAMBERT**                                                                                      **PLAINTIFF**

v.

**LOWE'S HOME CENTERS, LLC**                                                                  **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant Lowe's Home Centers, LLC's Motion for Summary Judgment and its Motion to Exclude Certain Exhibits. [DN 35, 49]. Fully briefed, these matters are ripe for decision. For the reasons stated below, the Motion for Summary Judgment is **GRANTED**, and the Motion to Exclude is **GRANTED**.

**I. BACKGROUND**

After initially being hired by Defendant Lowe's Home Centers, LLC (hereinafter "Lowe's") in 2002, Plaintiff Stanley Lambert began working at the Lowe's store in Franklin, Kentucky in 2008. He was employed at the Franklin location until September 13, 2011, when his employment was terminated. During the course of his employment at the Franklin Lowe's store, Lambert received four different written warnings and notices of violations of company policies for failing to notify a customer of a changed delivery date [DN 35-4], improperly discounting appliance power cords [DN 35-6], failing to report a safety hazard he created [DN 35-7], and attempting to induce management to mistakenly apply greater discounts for certain customers [DN 35-10]. His termination notice states that his termination was for "violation of company policies." [DN 35-10, at 2]. His manager at all times during his employment at the Franklin Lowe's store was Allen DeWitt.

In March 2011, Lambert injured his back on the job. Lambert attended several medical appointments, underwent an MRI, and completed physical therapy before returning to work. However, Lambert's back continued to hurt in July 2011. He attempted to obtain further treatment but was allegedly told that Lowe's would not pay for any more medical services under its workers' compensation program. Lambert asserts that he was in contact with a claims representative for Sedgewick Claims Management Services, a third party management company who administered Lowe's workers' compensation program, but he was unable to contact her after the July incidents when he was denied medical services. Lambert did not file a formal workers' compensation claim until after he was terminated.

Lambert also asserts that he was harassed by his manager and coworkers due to his national origin. Lambert, who is of Korean descent, alleges that coworkers made disparaging remarks about his race during the course of his employment, and that he reported these comments to his superiors. However, management never addressed the issue.

Lambert filed this action in Simpson Circuit Court in July 2014, asserting three claims against Lowe's. Count I asserts that he was terminated in retaliation for his filing of a workers' compensation claim in violation of KRS 342.197. Count II asserts that he was terminated on the basis of his national origin in violation of KRS 344.040. Count III asserts that he was terminated in retaliation for reporting his harassment in violation of KRS 344.280. Lowe's removed the action to this Court on the basis of this Court's diversity of citizenship jurisdiction. Lowe's then moved this Court for summary judgment. [DN 35]. Following Lambert's response, Lowe's also moved this Court to exclude certain exhibits Lambert included with his response. [DN 49].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts.*"* *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

Because this Court's ruling on Lowe's motion to exclude will determine what evidence will be considered in deciding the motion for summary judgment, the Court will address the motion to exclude first.

### A. MOTION TO EXCLUDE CERTAIN EXHIBITS

Lowe's asks the Court to exclude two exhibits: a photo of a portion of an order from the Kentucky Department of Workers' Claims [DN 45-10] and a declaration by Lambert [DN 45-3]. The Court will address each in turn.

#### 1. WORKERS' COMPENSATION ORDER

Lowe's argues that the workers' compensation order should be excluded, as Lambert failed to disclose this document as required under Rule 26 of the Federal Rules of Civil Procedure. Rule 26(a) outlines the mandatory disclosures each party must make in the course of litigation. Rule 26(a)(1)(A)(ii) specifically requires that a party must provide "a copy – or a description by category and location – of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." These disclosures are mandatory and must be made regardless of any specific discovery request for these materials. Here, the parties do not dispute that Lambert failed to disclose the workers' compensation order prior to filing his response to the motion for summary judgment, that the time for such disclosures has passed, and that Lambert has used the document to support his claims.

Thus, the Court must determine if the document should be excluded under Rule 37. Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In fact, "[t]he Sixth Circuit has interpreted the Rule 37(c)(1) exclusionary sanctions to be automatic and mandatory after a violation of Rule 26(a)." *Chavez v. Waterford School Dist.*, 2010 WL 3975314, at *2 (E.D. Mich. Oct. 8, 2010) (citing *Vance v. United States*, 182 F.3d 920,

4

at *3 (Table) (6th Cir. 1999)). The burden is squarely placed on non-disclosing party to demonstrate harmlessness. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citations omitted) ("We agree with the circuits that have put the burden on the potentially sanctioned party to prove harmlessness.)

Lambert has not met his burden of establishing harmlessness. In his response to the motion to exclude, Lambert states that the failure to disclose was inadvertent but fails to offer any reason as to why such failure was harmless to Lowe's, doing nothing more than describing the document as "merely an order showing that attorney fees were awarded to the Plaintiff for his successful workers compensation claim." [DN 53, at 2]. However, this description undermines the fact that the document contains a full name and contact information for a key witness as to Lambert's workers' compensation retaliation claim that Lambert had previously failed to adequately disclose. Thus, Lambert has not proven harmlessness. Therefore, Lowe's motion to exclude as to the workers' compensation order is **GRANTED**.

### 2. PLAINTIFF'S DECLARATION

Lowe's also argues that Lambert's declaration should be excluded for its failure to comply with the signature requirements of 28 U.S.C. § 1746 and this Court's Joint General Order 11-02. Declarations must be signed by the person making the declaration. 28 U.S.C. § 1746. However, the Supreme Court has recognized that signature requirements "can be adjusted to keep pace with technological advances." *Becker v. Montgomery*, 532 U.S., 757, 763 (2001). Rule 5(d)(3) of the Federal Rules of Civil Procedure does just that, stating that a court "may, by local rule, allow papers to be filed, signed, or verified by electronic means . . ." This Court, along with the Eastern District of Kentucky, established such a local rule through Joint General

Order 11-02. Thus, the Court must determine if Lambert's signature complies with these requirements.

Lambert's declaration concludes with a typed signature, stylized as "s/ Stanley Wilson Lambert II" over the same name in all capital letters. [DN 45-3, at 4]. Section 11(b) of Joint General Order 11-02 states that an electronic signature must be "preceded by an 's/' and typed in the space where the signature would otherwise appear." Thus, Lambert's electronic signature complies with the technical requirements of the Joint General Order. However, Lambert is not permitted to use an electronic signature.

Section 11(b) only allows for electronic signatures on documents that bear the name of a "Filing User," which is defined in § 1.2 as "an individual who has a court-issued login and password to file documents electronically." Further, § 3(a) of the Joint General Order states that "an attorney admitted to the Bar of this court, including an attorney admitted *pro hac vice*, shall register as a Filing User by completing the prescribed registration form and submitting it to the clerk . . ." Finally, § 11(a) states that "[t]he user login and password required to submit documents to the Electronic Filing System [shall] serve as the Filing User signature on all electronic documents filed with the court." There is no mention in the Joint General Order of represented parties being permitted to utilize an electronic signature.

Section 11(a) makes clear the rationale as to why a party may not use an electronic signature. The user login and password of the attorney whose name appears on filings is the *actual* signature, used to verify that this document did in fact originate from the individual who electronically signed the document. While anyone can type the name of an attorney at the bottom of a filing, only that attorney should have the login credentials necessary to complete the filing, making those credentials the guarantee of authenticity the Court sought to create through

6

the General Joint Order. If no login credentials have been issued to Lambert, then the Court has no similar verification that the declaration did in fact originate from him. Because the declaration in this case was submitted using the login credentials of Lambert's attorney, then, by the terms of the Joint General Order, the declaration was actually signed by Lambert's attorney, not Lambert.

Lambert argues that any objection to the signature on the declaration should have been raised within fourteen days of service of that document. Section 11(e) requires any party who disputes "the authenticity of the signature on that document" to file an objection within fourteen days of service. However, Lowe's objection is not to the signature's *authenticity*, but rather to its *sufficiency* under Rule 5(d)(3) and the Joint General Order promulgated under it. Lowe's does not contest in its motion that Lambert was the individual who placed an electronic signature on the declaration. Instead, Lowe's argues that such an electronic signature is not permitted by a represented party. Thus, the Joint General Order did not require Lowe's to object within fourteen days.

Because Lambert could not electronically sign the declaration, Lowe's motion to exclude as to the declaration is **GRANTED**.

### B. MOTION FOR SUMMARY JUDGMENT

### 1. WORKERS' COMPENSATION RETALIATION CLAIM

Count I of Lambert's complaint asserts that he was terminated in retaliation for filing a workers' compensation claim in violation of KRS 342.197. "To establish a claim under this provision, an employee must show that (1) [he] participated in 'a protected activity,' (2) the employer 'knew' that the employee had done so, (3) the employer took an 'adverse employment action' against the employee, and (4) 'a causal connection' existed between the two." *Witham v.*

*Intown Suites Louisville Ne., LLC*, 815 F.3d 260, 263 (6th Cir. 2016) (quoting *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 916 (Ky. Ct. App. 2006)). If the employee can establish all four prima facie elements, then the burden shifts to the employer to identify "a non-retaliatory reason for the adverse employment decision." *Upchurch*, 214 S.W.3d at 916. If a non-retaliatory reason can be shown, then the employee "may still succeed by showing the proffered reasons were nothing but 'a pretext' for retaliation." *Witham*, 815 F.3d at 263 (citations omitted).

Lambert has established that he participated in a protected activity. "[A] workers' compensation claim [is] an activity expressly protected under KRS 342.197." *Upchurch*, 214 S.W.3d at 915. While Lambert did not actually file his worker's compensation claim until after he was terminated, he has presented sufficient evidence that he was actively pursuing payment for his medical expenses for his work-related injury while he was employed, and "the language of KRS 342.197 was not intended to require 'a formal claim' before the employee receives the protection of" the statute. *First Property Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 189 (Ky. 1993). Likewise, Lambert has established that Lowe's knew of his pursuit of this claim, as he stated in his deposition that he initially went to a doctor at Lowe's direction following his injury and that this course of treatment eventually resulted in Lowe's refusing to pay for any subsequent treatment. (Pl.'s Dep. [DN 45-1], at 1–6). And Lambert has established that Lowe's took adverse action against him by terminating his employment.

However, taking the evidence in a light most favorable to the plaintiff, Lambert has not established a causal connection between his workers' compensation claim and his termination. "In most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and

8

(2) there is a close temporal relationship between the protected activity and the adverse action." *Brooks v. Lexington-Fayette Urban Cty. Housing Authority*, 132 S.W.3d 790, 804 (Ky. 2004). *See also Kentucky Dept. of Corrections v. McCullough*, 123 S.W.3d 130 (Ky. 2003). DeWitt, his manager and the decision maker responsible for his termination, admitted in his deposition that he knew Lambert had initiated a claim for his back injury, satisfying the first of these requirements. (Dep. Allen DeWitt [DN 35-5], at 31–32).

The question of whether there is a close temporal relationship between Lambert's claim and termination is more difficult. There is no requisite amount of time that will, as a matter of law, establish temporal proximity. *E.g., Bush v. Compass Group USA, Inc.*, --- F. Supp. 3d ---, 2016 WL 3827536 (W.D. Ky. July 13, 2016) (four to eight months not sufficient for temporal proximity); *Hume v. Quickway Transportation, Inc.*, 2016 WL 3349334 (W.D. Ky. June 15, 2016) (one month sufficient for temporal proximity). Further, there is ambiguity in this case as to what the relevant date should be in regards to Lambert's protected activity. His back injury occurred on March 11, 2011, and he received medical treatment until June 2011 when he returned to full-duty work. [DN 45-7, at 8]. However, Lambert sought additional medical treatment in July, when his pain returned. It was at this time that Lowe's refused to pay for certain medical expenses. [DN 45-1, at 5–7]. Lambert was terminated on September 13, 2011, and he filed a formal workers' compensation claim shortly afterward. [DN 35-8, at 10]. Despite these events unfolding over the course of roughly six months, the Court finds that the relevant date for Lambert's protected activity was July 2011, when he sought additional treatment, Lowe's denied payment, and Lambert allegedly began attempting to contact his risk management representative in regards to his injuries. Not only does this date relate to when Lambert was engaged in protected activity by seeking medical treatment through Lowe's workers'

9

compensation program, but it also is the date at which any tension between Lambert and Lowe's regarding his workers' compensation claim that may have led to his termination first became apparent.

This would make the amount of time between Lambert's protected activity and termination one-and-a-half to two-and-a-half months. While this is not so great a length of time that it would be impossible for Lambert to establish a causal connection, the problem is that this is the *only* evidence Lambert has as to a causal connection between his claim and his termination. "[S]ubstantial case law from the Sixth Circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." S*ee Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (collecting cases). Specifically, the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement his or her claim with other evidence of retaliatory conduct to establish causality.

In this case, Lambert has failed to provide sufficient evidence demonstrating causation. The only evidence he has presented is that he was terminated within two-and-a-half months of being denied medical treatment by Lowe's and attempting to contact a risk management company regarding this denial. While he has established that DeWitt, his manager, was aware of the fact that Lambert had been injured and had made a claim, he has provided no evidence DeWitt knew that Lambert had attempted to obtain more medical treatment in July and had been denied, or that he knew Lambert was attempting to contact his risk management representative in regards to obtaining further treatment. DeWitt stated in his deposition,

> He did – he did injure his back. I think there was a claim filed on it. I wasn't directly involved with the claim, but – and typically I am not. That's usually through human resources. And actually, we have a third-party administrator that does that, that manages

10

> that for us. So typically I don't really get involved. But I was aware that he injured his back.

(Dep. Allen DeWitt [DN 35-5], at 31–32). Lambert has offered no evidence to show that DeWitt had any more involvement in Lambert's claim beyond being aware that one had been made. Because DeWitt was the individual who made the decision to terminate Lambert, Lambert must show some evidence that DeWitt would have been aware of the details of Lambert's claim that would have motivated him to terminated Lambert. But Lambert has presented no such evidence, and with such a lengthy time between Lambert's protected activity and the decision to terminate him, Lambert has failed to establish a causal connection as is required in his prima facie case.

Lambert states in his declaration that he actually attempted to receive treatment and was denied payment by Lowe's in "mid-August 2011," [DN 45-3, at 2–3], not July 2011 as he implied in his deposition. If the declaration had not been excluded as evidence, this would place the denial of treatment and his termination within approximately one month of each other, making the causal connection element an even closer question. However, even if the declaration was admitted and the Court found that Lambert established a prima facie case, Lowe's has meticulously presented evidence of a non-retaliatory reason for termination. They have provided documentation of every warning and disciplinary action taken against Lambert up to his termination. Three of these written reports, including one that is marked "Final Notice" [DN 35-7], were filed before Lambert even injured his back in March 2011. Lowe's has sufficiently presented evidence of a non-retaliatory reason for termination through Lambert's violations of company policies, and Lambert has presented no evidence to show that this reason is merely pretextual. In his response to the motion for summary judgment, Lambert merely provides an overview of the methods for proving pretext along with the conclusory statement that "Plaintiff has produced more than sufficient evidence to demonstrate Lowe's alleged, nondiscriminatory

11

reason for terminating Plaintiff are merely pretext" without offering any explanation as to how that evidence demonstrates pretext. [DN 44, at 10]. But because Lambert cannot establish the causal connection that is required in his prima facie case, his claim fails regardless of whether he can establish pretext. Therefore, Lowe's motion for summary judgment as to Count I is **GRANTED**.

### 2. NATIONAL ORIGIN DISCRIMINATION CLAIM

Count II of Lambert's complaint alleges he was terminated on the basis of his national origin in violation of KRS 344.040, a subsection of the Kentucky Civil Rights Act (hereinafter "KCRA"). The provisions of the KCRA "are virtually identical to those of the Federal [Civil Rights Act]," *Jefferson Cty v. Zaring*, 91 S.W.3d 583, 586 (Ky. 2002) and "in this particular area we must consider the way the Federal act has been interpreted." *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984). As a result, Kentucky courts apply the same framework to civil rights termination claims as they do to retaliatory termination claims. First, the plaintiff must establish a prima facie case of discrimination. Second, the defendant must articulate some legitimate nondiscriminatory reason for the termination to rebut the prima facie case. And third, the plaintiff must prove that the defendant's proffered reasons are merely pretextual. *See Zaring*, 91 S.W.3d at 590.

"To allege a prima facie claim of race discrimination, [a plaintiff has] to allege that: "(1) [he] is a member of a protected class; (2) [he] was qualified for [his] job; (3) [he] suffered an adverse employment decision; and (4) [he] was replaced by a person outside the protected class or treated differently than similarly situated nonprotected employees." *Smith v. APL Logistics Warehouse Mgmt. Svcs., Inc.*, 2016 WL 4409193, at *2 (W.D. Ky. Aug. 15, 2016) (citing *Keys v. Human, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). Without regard to any of the other

requirements, Lambert has failed to establish a prima facie case due to his failure to offer any evidence of either who Lowe's hired as his replacement or the treatment of similarly situated nonprotected employees. There is no evidence at all regarding how Lowe's chose to replace Lambert after his termination, and Lambert has offered no evidence that other employees were treated differently than he was despite being similarly situated. Without any evidence to establish either of these propositions, Lambert has failed to establish a prima facie case of national origin discrimination. Therefore, Lowe's motion for summary judgment as to Count II is **GRANTED**.

### 3. CIVIL RIGHTS RETALIATION CLAIM

Count III of Lambert's complaint alleges that he was terminated in retaliation for reporting incidents of harassment due to his national origin, in violation of KRS 344.280. Just as with the workers' compensation retaliation claim and the civil rights claim, Lambert bears the initial burden of proving a prima facie case, which consists of the following:

> (1) that plaintiff engaged in an activity protected by [the KCRA];
> (2) that the exercise of his civil rights was known by the defendant;
> (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Brooks*, 132 S.W.3d at 803. The same burden shifting scheme applies as with the other two claims, where the defendant then must offer a nondiscriminatory reason for the discharge, and the plaintiff must prove that such a reason is pretextual.

At the outset, many of the incidents upon which Lambert bases his claim are not actionable under KRS 344.280. In order to be protected under the KCRA, the plaintiff must have been "engaged in an activity protected by [the KCRA]." *Brooks*, 132 S.W.3d at 803. Further, KRS 344.280(1) makes it unlawful "to retaliate or discriminate in any manner against a

13

person because he has . . . made a charge . . . under this chapter." However, Lambert's complaint states many allegations of harassment that relate to matters not protected by the KCRA. For example, one incident of harassment was in relation to Lambert's pay being disclosed to other employees, which Lambert alleges he reported to management and no action was taken. (Dep. Stanley Lambert [DN 35-8], at 5–7). Even if the incident occurred and Lambert was fired in retaliation, KRS 344.280 would provide him no relief, as his actions were not protected under the KCRA. *See* KRS 344.040 (making it unlawful for an employer to terminate an employee "because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker . . .").

The only incident that would possibly entitled Lambert to relief under KRS 344.280 is the allegation that Lambert's coworkers were making racially charged statements about him in May 2011 and, upon Lambert reporting this to management, no action was taken. (Dep. Stanley Lambert [DN 45-1], at 4). Taking the evidence in a light most favorable to the plaintiff, Lambert has established the first three elements of his prima facie case. He was engaged in protected activity when he reported the harassment on the basis of race, his exercise of his civil rights were known by Lowe's through his reporting to DeWitt, and he was terminated. However, for the same reasons that Lambert cannot show a causal connection between his workers' compensation claim and his termination, Lambert cannot show a causal connection between this reporting of harassment and his termination. The only indication as to what date Lambert reported the harassment is "[a]t the end of May 2011." (Pl.'s Verified Compl. [DN 1-1], at 8). This event is in even less temporal proximity to Lambert's termination than his workers' compensation claim, as it would have occurred three-and-a-half months before his termination. And again, the

14

temporal proximity between this single instance of reporting harassment and his termination is the *only* evidence Lambert has presented in support of his claim. *See Lewis-Smith v. Western Ky. Univ.*, 85 F. Supp. 3d 885, 910–912 (W.D. Ky. 2015) (finding no causal connection between plaintiff's complaints of racial discrimination and termination when termination occurred four months after complaints were made and plaintiff offered no other evidence of a causal relationship). Further, even if Lambert could show a causal connection, Lowe's has presented a legitimate non-retaliatory reason for Lambert's discharge, as he had committed three violations of company policy and received a final notice before he made any complaint, and Lambert has not offered any evidence to demonstrate pretext.[1]  Therefore, Lowe's motion for summary judgment as to Count III is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Lowe's Motion to Exclude is **GRANTED**, and Lowe's Motion for Summary Judgment is **GRANTED**.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

October 19, 2016

cc: counsel of record

---

[1] Lambert's response to Lowe's motion for summary judgment makes no argument in opposition to summary judgment being granted as to Count III.  When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived and grant the motion.  *Humphrey v. U.S. Att'y Gen.'s Office*, 279 Fed. App'x 328, 331 (6th Cir. 2008). Regardless, Lowe's has sufficiently proven that it is entitled to summary judgment on the merits.

15